**Darryl WILLIAMS, Shirley Simmons, William Simmons and Karmel Williams, Plaintiffs,**

v.

**The CITY OF BOSTON, Kevin H. White, David Finnegan, John O'Bryant, Kathleen Sullivan Alioto, John McDonough, Paul R. Tierney, Robert S. Wood, John Kelly, Ronald Spratting, John Doe, Robert Murphy, Richard Roe, Joseph M. Jordan, John O. Ridlon, Newman Flanagan, and Daniel C. Mullane, Defendants.**

Civ. A. No. 82–2844–C.

United States District Court, D. Massachusetts.

Dec. 28, 1984.

Katherine S. McHugh, Edward J. Barshak, Natasha C. Lisman, Sugarman, Rogers, Barsak & Cohen, Boston, Mass., for plaintiffs.

Thomas C. Cameron, DiMento & Sullivan, Boston, Mass., for defendant John McDonough.

John E. Keenan, Jr., Driscoll, Keenan & Keenan, Worcester, Mass., for defendants Hugh Mullen and Mike Sheeran.

Steven P. Perlmutter, Asst. Corp. Counsel, City of Boston Law Dept., Boston, Mass., for Spratting, Kelly, Murphy, for City of Boston, Kevin H. White, Jos. Jordan and John O'Bryant and Woods (city defendants).

Roberta Thomas Brown, Asst. Atty. Gen., Chief, Torts Division, Boston, Mass., for defendants Mullane and Flanagan.

Matthew E. Dwyer, Grady, Dumont & Dwyer, Boston, Mass., for defendant Hugh Mullen.

## MEMORANDUM

CAFFREY, Chief Judge.

This civil action seeks recovery of damages· because of the tragic and brutal shooting of a black Jamaica Plain High School student while participating in an interscholastic football game in Charlestown. Darryl Williams, the victim of the shooting has brought a civil rights action against the City of Boston, the former Mayor, the District Attorney, and members of the School Committee, as well as school and police officials. He alleges, *inter alia,* that the defendants knew or should have known that violent attacks on black athletes were likely to occur in the Charlestown section of Boston, that they failed to implement adequate security measures, and that he was shot and injured as a result, thereby depriving him of his constitutional rights. Other counts of the complaint allege that certain of the defendants engaged in a conspiracy to cover up the racial nature of the attack, thereby depriving Williams of other constitutional rights and inflicting emotional distress. Darryl's mother, stepfather and sister join him as plaintiffs alleging deprivation of their constitutionally protected interests in Darryl as well as severe emotional distress. The case is before the court on the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Furthermore, all allegations contained in the challenged complaint must be taken as true and all reasonable inferences drawn in the plaintiffs favor. *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1976).

### The Shooting Allegations

■ There are two essential elements to a 42 U.S.C. § 1983 action: (1) the plaintiff must allege and prove that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the constitution or Laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The conduct complained of in this case is the affirmative act of scheduling the game in Charlestown, a neighborhood allegedly known for racial hostility and violent crime, and the negative act consisting of the failure to promulgate or implement adequate safety measures to protect the participating athletes. Insofar as the defendants performed or failed to perform these acts in their capacities as school, city, or police officials, there is no doubt that they acted under color of law.

The second element, that there be deprivation of a federal right, presents a much more troublesome question. The plaintiffs argue that the defendants had a duty to provide a safe environment, that the failure to do so was causally related to Darryl Williams' injury, and that because the defendants acted under color of state law the injury is cognizable under § 1983. This argument, although ingenious, suffers from several basic flaws.

■ The first flaw is the plaintiffs' contention that breach of a tort duty necessarily gives rise to a § 1983 claim. That this is not the law is a principle well established and generally recognized. *E.g. Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation by state official not cognizable under § 1983); *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (where due process requirements of the constitution are met, liability for a state tort is irrelevant); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (medical malpractice does not become a constitutional violation merely because the victim is a prisoner). Therefore, the plaintiff does not avail himself of a civil rights remedy by his allegations that the defendants had common law or statutory duties to protect Darryl Williams. In order to state a claim under § 1983 a plaintiff must allege deprivation of a *federal* right. *Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405.

A second flaw lies in plaintiff's contention that a causal connection between an act of a state officer and injury to a person establishes a deprivation of a right cognizable under § 1983. The authority to which plaintiff cites, however, does not support this theory. *See e.g. Monell v. Dept. of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Clark v. Taylor,* 710 F.2d 4 (1st Cir.1983); *Fernandez v. Chardon,* 681 F.2d 42 (1st Cir. 1982), *cert. den.,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). In the cited cases, causation is discussed only insofar as it defines the scope of supervisory liability, and not as a basis for finding a deprivation of federal rights. *Id.* In other words, causation may help identify a proper defendant but does not guarantee that the plaintiff has a viable claim. *Fernandez,* one of the cases which the plaintiffs misconstrue, expressly identifies causation as a factor on the first element of § 1983 analysis, i.e. whether the conduct was committed by a person acting under color of state law, and distinct from the deprivation issues. *Supra* at 55.

Furthermore, the plaintiffs erroneously argue that because the plaintiff's injury was severe, and the defendants, as state officials, contributed to the happening of the injury, that the injury constitutes a deprivation of substantive due process. In this analysis, however, plaintiffs fail to come to terms with the fact that the *shooting* was not done under color of state law nor by a state officer. The most that can be alleged is that these officers shared some responsibility for planning or policy-making with regard to the football game and failed to provide the necessary security. Therefore, the complaint can survive defendants' 12(b)(6) motions only if such

responsibility and failure violates a constitutional right of the plaintiff.

■ In most circumstances there is no constitutional right to basic services such as adequate police protection. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982). Exceptional cases, where there is a right to adequate protection from third persons, arise where the state itself places the plaintiff in a position of danger. Most of these exceptional cases involve involuntary commitment to state custody in either a mental institution or a prison. *E.g. Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Clark v. Taylor*, 710 F.2d 4 (1st Cir.1983); *Withers v. Levine*, 615 F.2d 158 (4th Cir.1980), *cert. den.*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980); *Redmond v. Baxley*, 475 F.Supp. 1111 (E.D.Mich. 1979). Other cases imposing § 1983 liability involve circumstances where the state officer placed the victim in a position of peril, such as leaving two young children alone in a car by the roadside after arresting the operator. *White v. Rochford*, 592 F.2d 381 (7th Cir.1979). The common thread in all these cases is that the state placed an involuntary victim in peril and that injury by third persons or forces was forseeable. In other words, a civil rights remedy is available only where the injury is caused by government action, and not where it is caused by mere government inaction.

This distinction has its basis in the origins of the Fourteenth Amendment, which was intended to protect individual rights from state interference. The Court of Appeals for the Seventh Circuit stated this principle most succinctly: "The concern is with the use of state-created power to [harm] rather than the state's failing to prevent [harm]." *Jackson v. City of Joliet*, 715 F.2d 1200, 1204. Thus, where a victim voluntarily places himself in peril and injury is caused by a third person,

there is no due process right to protection or aid.

The circumstances attendant on Williams' injury lack that degree of involuntariness on his part necessary to support § 1983 liability. Although Williams was under state compulsion to attend school, he was not required to attend any particular school, nor to participate in athletics, nor to travel to Charlestown for this particular game. Given the voluntary nature of Williams' conduct, it is irrelevant to the civil rights analysis that defendants may have owed him a common law or statutory duty of care as alleged by the plaintiffs, the breach of which might support an action for tort.

In so ruling, I note that this case is inapposite to *DiMarzo v. Cahill*, 575 F.2d 15 (1st Cir.1978), *cert. den.*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978), where a prison inmate brought an action against the Commissioner of Corrections complaining of unconstitutional conditions in a county jail. The Court of Appeals for the First Circuit held that the Commissioner was a proper defendant in the action because of his statutory duty to provide minimum standards of care and custody for inmates, *id.* 18. The violation of statutory duty, however, was not the origin of the constitutional deprivation. The Court of Appeals found the jail conditions themselves to be a violation of constitutional standards. The Commissioner's statutory duty merely identified him as a proper defendant. In the present case, no independent constitutional violation has been alleged. Consequently, the allegations of statutory and common law duties fail to establish § 1983 liability of the defendants to plaintiff.

A final group of cases which deserve mention insofar as they relate to this case concern the release of prisoners or mental patients who subsequently commit crimes. *E.g. Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982). Although the courts have generally found that the releasing authorities are not liable to the victims of such crimes under § 1983,

plaintiff Williams purports to find support for his theory in *Martinez*. The *Martinez* court found that parole officers bore no § 1983 liability for the release of a sexually dangerous inmate who, five months later, murdered a fifteen year old girl, but reserved the question of whether a parole officer could ever "be deemed to 'deprive' someone of [a constitutional right] by action taken in connection with the release of a prisoner on parole." 444 U.S. at 285, 100 S.Ct. at 559. The court identified two reasons why liability was not appropriate in *Martinez:* (1) the parole Board was not aware that the victim, as opposed to the public at large, faced any special danger, and (2) the decedents death was too remote a consequence to hold the parole officers responsible. *Id.*

Interesting though it may be to speculate on the direction which the United States Supreme Court may take in the wake of *Martinez*, I note that the factors identified by the Supreme Court as negating § 1983 liability in *Martinez* are also present in this case. Darryl Williams was no more foreseeable victim of harm than any other person in attendance at the football game. At oral argument counsel for the plaintiff conceded that if the bullet which struck Darryl Williams had gone across the playing field and hit a female student in the stands that there would be no § 1983 liability on the defendants. Liability should not turn on the flight of an assassin's bullet. Furthermore, as in *Martinez*, the causal connection between the defendants' acts and the plaintiff's injury is too tenuous to impose § 1983 liability. I therefore rule that *Martinez* cannot provide a basis for denial of the motion to dismiss.

### The Conspiracy Allegations

 The plaintiff also attempts to set forth a claim based on an alleged conspiracy to cover up the racial nature of the attack. The sparse case law in this area indicates that a conspiracy of silence, or

filing of false statements, may be actionable under § 1983 where it results in deprivation of constitutional rights such as continued illegal confinement. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979); *rev'd on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir.1973). The focus should be on the consequences, not the existence of the allegedly false statements. *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980). Here, neither Williams nor his family has alleged a deprivation of any federal right as a result of the cover up. Furthermore, even if there were a state law duty to inform the plaintiffs of the truth, breach of this duty would not be cognizable in § 1983. *Cloutier v. Town of Epping*, 714 F.2d 1184, 1190 (1st Cir.1983). By the same token, the existence of a constitutionally protected interest in the company and companionship of a family member does not support a § 1983 suit absent some constitutionally impermissible deprivation of the interest by a defendant. Here, the defendants have not "caused" the injury to Darryl Williams within the contemplation of § 1983, and therefore cannot have caused a constitutional deprivation of his company to the other plaintiffs.

Because it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief, *Conley v. Gibson, supra*, I rule that all Civil Rights counts in the complaint should be dismissed under Rule 12(b)(6), and in light of that ruling that the pendent state claims also should be dismissed.

Order accordingly.